FILED & JUDGMENT ENTERED
Steven T. Salata

December  11  2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re: | Chapter 11 |
| PORTRAIT INNOVATIONS, INC., *et al*. [1] | Case No. 17-31455 (JCW) |
| Debtors. | Jointly Administered |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

Portrait Innovations, Inc. and Portrait Innovations Holding Company (collectively, the "Debtors") having:[2]

    a.    commenced these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on September 1, 2017 (the "Petition Date");

    b.    continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed, on September 8, 2017, the *Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 62] and the *Disclosure Statement for the Debtors'*

---

[1] The Debtors in these jointly administered cases are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Portrait Innovations, Inc. (9394), and Portrait Innovations Holding Company (5553).  The Debtors' address is 2016 Ayrsley Town Center Boulevard, Suite 200, Charlotte, North Carolina 28273.

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtors' Amended Joint Chapter 11 Plan of Reorganization*, dated October 13, 2017 [Docket No. 191] (as the same may have been subsequently modified, supplemented and amended, the "Plan"). The rules of interpretation set forth in Article I of the Plan shall apply to this order (the "Confirmation Order").

*Joint Chapter 11 Plan of Reorganization* [Docket No. 63], which plan and disclosure statement were subsequently modified as set forth herein;

d.     filed, on September 8, 2017, the *Motion of the Debtors for Entry of an Order (A) Approving the Disclosure Statement, (B) Approving Certain Dates Related to Confirmation of the Plan, (C) Approving Certain Voting Procedures and the Form of Certain Documents to be Distributed in Connection with Solicitation of the Plan, and (D) Approving Proposed Voting and General Tabulation Procedures* (the "Solicitation Procedures Motion") [Docket No. 64];

e.     filed, on December 6, 2017, the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* (as may have been subsequently modified, supplemented and amended, the "Plan") [Docket No. 276];

f.     filed, on October 13, 2017, the *Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement") [Docket No. 192];

g.     filed, on October 19, 2017, the *Notice of Possible Assumption of the Debtors' Executory Contracts and Unexpired Leases and Proposed Cure Amounts* (the "Cure Notice") [Docket No. 203], and served such notice on the counterparties to the Executory Contracts and Unexpired Leases contained therein as evidenced by the *Affidavit of Service,* filed on November 8, 2017 [Docket No. 229];

h.     distributed solicitation materials, on or about October 30, 2017, to Holders of Claims entitled to vote on the Plan, contract and lease counterparties and parties in interest, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the *Order (A) Approving the Disclosure Statement, (B) Approving Certain Dates Related to Confirmation of the Plan, (C) Approving Certain Voting Procedures and the Form of Certain Documents to be Distributed in Connection with Solicitation of the Plan, and (D) Approving Proposed Voting and General Tabulation Procedures,* entered on October 16, 2017 (the "Solicitation Procedures Order") [Docket No. 197], which Solicitation Procedures Order also approved, among other things, solicitation procedures and related notices, forms, and ballots (collectively, the "Solicitation Packages") as evidenced by the *Affidavit of Service,* filed November 3, 2017 [Docket No. 225], the *Supplemental Affidavit of Service* filed November 30, 2017 [Docket No. 263] and the *Second Supplemental Affidavit of Service*, filed November 30, 2017 [Docket No. 264] (collectively, the "Solicitation Affidavit");

i.     published, on November 13, 2017, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") in the national edition of the Wall Street Journal to provide notice to creditors who are unknown or not reasonably ascertainable by the Debtors and creditors whose identities are known but whose addresses are unknown by the Debtors, as evidenced by the *Verification of Publication,* filed November 13, 2017 (the "Publication Affidavit") [Docket No. 238];

j.    filed, on November 10, 2017, the *Notice of Filing of Assumption Schedule and Adequate Assurance Information* (the "Assumption Notice") [Docket No. 236], attaching a list of those Executory Contracts and Unexpired Leases that would be assumed by the Potential Bidder pursuant to the Plan and in accordance with the cure amounts designated in the Cure Notice, and served such notice on the counterparties to the Executory Contracts and Unexpired Leases contained therein as evidenced by the *Affidavit of Service,* filed November 14, 2017 [Docket No. 240];

k.    filed, on November 10, 2017, the *Notice of No Competing Bids and Cancellation of Auction* (the "Notice of Winning Bidder") [Docket No. 237];

l.    served notice of the General Bar Date and other bar dates to parties in interest entitled to notice of such bar dates, as evidenced by the Affidavits of Service filed on the record at Docket Nos. 104, 145, 169, 171, 173, 175 and 252;

m.    filed, on November 20, 2017, the Plan and the Plan Supplement [Docket No. 246], which includes the following documents: (A) Restructuring Summary (including Directors and Officers of the Reorganized Company); (B) State of Delaware Limited Liability Company Certificate of Formation ([New PI OpCo], LLC); (C) [New PI OpCo], LLC Limited Liability Company Agreement; (D) State of Delaware Limited Liability Company Certificate of Formation ([New PI] Holdings, LLC); (E) Limited Liability Company Agreement of [New PI] Holdings, LLC; and (F) Note Purchase Agreement; all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time prior to the Effective Date and thereafter in accordance with their terms, in accordance with each Reorganized Company's applicable constituent documents;

n.    filed, on December 5, 2017, the *Declaration of Catherine Nownes-Whitaker of Rust Consulting/Omni Bankruptcy Regarding Certification of Ballots Case with Respect to Debtors' Amended Joint Chapter 11 Plan of Reorganization* (the "Voting Certification") [Docket No. 270];

o.    filed, on December 5, 2017, the *Declaration of John Grosso in Support of Confirmation of the Debtors' Amended Joint Chapter 11 Plan of Reorganization* (the "Grosso Declaration") [Docket No. 269];

p.    filed, on December 5, 2017, the Notice of Filing Proposed Findings of Fact, Conclusions of Law and Order Confirming Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. _____]; and

The United States Bankruptcy Court for the Western District of North Carolina (the

"Bankruptcy Court" or the "Court") having:

a.      entered that *Order (A) Establishing the Form of Bidding Procedures for the Solicitation of Competing Offers to Purchase the Equity Interests in the Reorganized Company Pursuant to the Debtors' Chapter 11 Plan; (B) Authorizing the Debtors to Conduct an Auction; and (C) Granting Related Relief* on October 16, 2017 (the "<u>Bidding Procedures Order</u>") [Docket No. 196];

b.      entered that *Order Authorizing the Debtors to Assume Restructuring Support Agreement* on October 17, 2017 (the "<u>RSA Order</u>") [Docket No. 199];

c.      entered the Solicitation Procedures Order on October 16, 2017 [Docket No. 197];

d.      set December 7, 2017 at 9:30 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

e.      reviewed the Plan, Disclosure Statement, the Plan Supplement, the Grosso Declaration, the Voting Certification and all other filed pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

f.      heard the statements, arguments and objections made by counsel in respect of Confirmation of the Plan;

g.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation of the Plan;

h.      overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

i.      taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law and orders:

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

1.    Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L), and the Court may enter an order consistent with Article III of the United States Constitution. The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference from the United States District Court for the Western District of North Carolina* dated as of July 30, 1984. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.    Eligibility for Relief**

2.    The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**C.    Commencement and Joint Administration of the Chapter 11 Cases**

3.    Beginning on the Petition Date, each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By prior order of the Bankruptcy Court, these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 51]. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

D.     **Committee Formation**

4.     On September 20, 2017, the Court entered an order appointing a six-member Committee [Docket No. 109].

E.     **Judicial Notice**

5.     Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases.

F.     **Claims Bar Date**

6.     On September 13, 2017, the Bankruptcy Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving Bar Date Notices and Mailing Procedures and (III) Providing Certain Supplemental Relief* (the "Claims Bar Date Order") [Docket No. 87], which, among other things, (a) established bar dates for filing Proofs of Claim (including claims arising under section 503(b)(9) of the Bankruptcy Code), (b) approved the form and manner for filing Proofs of Claim and (c) approved notice of the applicable bar dates. The Claims Bar Date Order established, as applicable, (a) 4:00 p.m. prevailing Eastern Time on October 25, 2017 as the bar date for all persons or entities to file Claims that arose (or are deemed to have arisen) before the Petition Date, including claims by governmental units (the "General Bar Date"); (b) 4:00 p.m. prevailing Eastern Time on a date that is the later of (1) the General Bar Date and (2) thirty (30) days after the later of (i) entry of an order of this Court authorizing rejection of an executory contract or unexpired lease or (ii) the effective date of the rejection of such executory contract or unexpired lease, as the bar date for all holders of Rejection Damages Claims

("Rejection Bar Date"); and (c) 4:00 p.m. prevailing Eastern Time on a date that is the later of

(1) the General Bar Date and (2) twenty-four (24) days after the date that notice of amendment is

served on an affected claimant ("Amended Schedule Bar Date").

**G.**    **Bidding Procedures Order and Assumption Procedures**

7.    On October 16, 2017, the Bankruptcy Court entered the Bidding Procedures

Order, which, among other things: (a) approved Bidding Procedures in connection with an

Auction for equity interests in the reorganized company; (b) authorized and scheduled a date and

time for an Auction pursuant to such procedures; and (c) established procedures for the potential

assumption or rejection of Executory Contracts and Unexpired Leases under the Plan (the

"Assumption Procedures").  The Debtors have served all of the counterparties to the Executory

Contracts and Unexpired Leases, by first class mail, with the Cure Notice and the Assumption

Notice, which provided notice of the following: (i) the possible assumption of such contracts and

leases by the Debtors; (ii) the proposed Cure Amounts (defined below) related thereto; and (iii)

the deadline for filing any objections and responses related thereto (any so filed objections, each

an "Objection").  Due, adequate and sufficient notice of the Assumption Procedures, together

with all deadlines for objecting to assumption of any Executory Contracts or Unexpired Leases

pursuant to the Plan, has been given to all counterparties to Executory Contracts and Unexpired

Leases by virtue of the Cure Notice and the Assumption Notice. Because such notice was

adequate and sufficient, no other or further notice is necessary or shall be required.

**H.**    **Solicitation Procedures Order**

8.    On October 16, 2017, the Bankruptcy Court entered the Solicitation Procedures

Order, which, among other things: (a) approved the Disclosure Statement as containing adequate

information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed October 25,

2017 as the Voting Record Date; (c) fixed November 30, 2017 at 5:00 p.m. prevailing Eastern

Time, as the Voting Deadline; (d) fixed November 30, 2017 at 5:00 p.m. prevailing Eastern Time, as the deadline to object to confirmation of the Plan; (e) fixed December 7, 2017 at 9:30 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Debtors' solicitation and voting procedures, the Solicitation Packages and other materials relating to solicitation, including the Non-Voting Status Notices sent to holders of Claims and interests not entitled to vote on the Plan.

**I.     Transmittal and Mailing of Solicitation Materials: Notice**

9.      Due, adequate and sufficient notice of the Plan, the Disclosure Statement and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to known holders of Claims and Interests in compliance with Bankruptcy Rules 2002(b), 3017(d), (e) and (f), as evidenced by the Solicitation Affidavit and [Supplemental Solicitation Affidavit]. The Solicitation Packages and all other materials relating in any way to the solicitation process were transmitted and served in substantial compliance with the Solicitation Procedures Order and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Western District of North Carolina (the "Local Rules"), and all other applicable rules, laws and regulations. Additionally, in accordance with the Solicitation Procedures Order, the Debtors published notice of the Confirmation Hearing in the publication listed in the Publication Affidavit. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**J.     Adequacy of Solicitation**

10.     The Debtors, with the assistance of the Claims and Solicitation Agent, and in accordance with sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3016, 3017 and 3018, distributed applicable Solicitation Packages to all holders of Claims and Interests entitled to vote to accept or reject the Plan and sufficient time was prescribed for such holders of

Claims and Interests to vote in substantial compliance with the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations. Transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials in compliance with the Solicitation Procedures Order. All procedures used to distribute Solicitation Packages to holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

**K.** **Plan Supplement**

11. On November 20, 2017, the Debtors filed the Plan Supplement [Docket No. 246], and the documents contained therein are incorporated by reference into the Plan. The Plan Supplement, as may be amended or modified in accordance with this Confirmation Order, complies with the terms of the Plan, and no other or further notice is or shall be required.

**L.** **Voting Certification**

12. On December [5], 2017, the Debtors filed the Voting Certification. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

13. As set forth in the Plan and Disclosure Statement, only holders of Claims in Classes 3 and 4 (collectively, the "Voting Classes") are eligible to vote on the Plan. Holders of Claims in Classes 1 and 2 are designated as Unimpaired (collectively, the "Presumed Accepting Classes") and presumed to have accepted the Plan, and therefore are not entitled to vote to accept or reject the Plan. Holders of Claims or Interests in Classes 5, 6 and 7 (collectively, the "Deemed

<u>Rejecting Classes</u>") are deemed to reject the Plan, and therefore are not entitled to vote to accept or reject the Plan.

14.     As evidenced by the Voting Certification, [Classes 3 and/or 4] with respect to each Debtor voted to accept the Plan.

15.     Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims as to each Debtor (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**M.     Bankruptcy Rule 3016**

16.     The Plan is dated and identifies the Entities submitting and filing it, thereby satisfying the requirements of Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied the requirements of Bankruptcy Rule 3016(b).

**N.     Burden of Proof**

17.     The Debtors, as proponents of the Plan, have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**O.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

18.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**(a)     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

19.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

### (a)     Sections 1122 and 1123(a)(1)—Proper Classification

20.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Section 3.1, of the Plan provides for the separate classification of Claims and Interests into seven Classes, based on differences in the legal nature or priority of such Claims and Interests (other than DIP Facility Claims, Administrative Expense Claims, Professional Claims, and Priority Tax Claims, which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not created for any improper purpose and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.

21.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (b)     Section 1123(a)(2)—Specification of Unimpaired Classes

22.     Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (c)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes

23.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3, 4, 5, 6 and 7. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (d)    Section 1123(a)(4)—No Discrimination

24.    Article III of the Plan provides the same treatment for each Claim or Interest within a particular class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (e)    Section 1123(a)(5)—Adequate Means for Plan Implementation

25.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation: (a) the reorganization and restructuring of the Debtors' prepetition debts via the consummation of the Restructuring Transaction; (b) the vesting of assets in the Reorganized Company; (c) the issuance and distribution of the New Shares to the Winning Bidder under the Plan; (d) the execution of the New Governance Documents; (e) the issuance of the New Notes; (f) the execution of all necessary documentation in connection with and the incurrence of all obligations under the Exit Financing to be provided by the Winning Bidder; and (g) the disbursement of cash sufficient to fund the Administrative Claims Reserve, the Professional Fee Reserve, the GUC Fund, and to pay the DIP Facility Claims in full.

### (f)    Section 1123(a)(6)—Voting Power of Equity Securities

26.    The New Governance Documents for the Reorganized Company contained in the Plan Supplement prohibit the issuance of non-voting securities. The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### (g)    Section 1123(a)(7)—Selection of Officers and Directors

27.     The identity of the officers and directors of the Reorganized Company, as selected by the Winning Bidder, are set forth in the Plan Supplement. The selection of the initial directors and officers of the Reorganized Company was, is and will be consistent with the interests of holders of Claims and Interests and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### (h)     Section 1123(b)—Discretionary Contents of the Plan

28.     The Plan contains various provisions that may be construed as discretionary and not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### i.     Section 1123(b)(1)—(2)—Claims and Executory Contracts

29.     Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests. Article VI of the Plan addresses the Debtors' Executory Contracts and Unexpired Leases and provides for: (i) the assumption by the Debtors and vesting in the Reorganized Company of the Executory Contracts and Unexpired Leases as set forth on <u>Exhibit A</u> and <u>Exhibit B</u> to this Order (the "<u>Assumption Schedules</u>"); and (ii) the rejection of any other Executory Contracts or Unexpired Leases not set forth in the Assumption Schedules.   The evidence supporting adequate assurance of future performance proffered or adduced by the Debtors at or prior to the Confirmation Hearing, or contained in the Grosso Declaration filed in connection with the Confirmation Hearing: (a) is reasonable, persuasive and credible; (b) has not been controverted by other evidence; and (c) satisfies the requirements of the Bankruptcy Code.

### ii.     Section 1123(b)(3)-(6)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action

30.   **Compromise and Settlement**. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan and is fair, equitable and reasonable and is in the best interests of the Debtors, the Estates, and all holders of Claims and Interests,.

31.   **Releases by the Debtors**. The release and discharge of certain Claims and Causes of Action by the Debtors described in Section 9.2 of the Plan (the "Debtor Release") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment. Pursuing any such claims is not in the best interests of the Debtors' various constituencies, as the costs involved (both tangible and intangible) likely would outweigh any potential benefits from pursuing such claims. In addition, good and valuable consideration has been provided in exchange for the Debtor Release.

32.   Releases by the Debtors as set forth in Section 9.2 of the Plan are critically important to the success of the Debtors' Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders and reflects and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.

33.   The Plan reflects the settlement and resolution of several complex issues, and the releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan.

34.     In approving the Debtor Release based on the record and the facts and circumstances of these Chapter 11 Cases, the Bankruptcy Court hereby determines that the Debtor Release: (a) is provided in exchange for the good and valuable consideration, (b) is a good faith settlement and compromise of the claims released by the Debtor Release; (c) is in the best interests of the Debtors and all holders of Claims and Interests; (d) is fair, equitable and reasonable; (e) is given and made after due notice and opportunity for hearing; and (f) constitutes a bar to any Entity granting a release under Section 9.2 from asserting any Claim or Cause of Action released by Section 9.2.

35.     **Releases by Holders of Claims**. The circumstances of these Chapter 11 Cases render the releases of Claims and Causes of Action by Holders of Claims and Interests described in Section 9.3 of the Plan (the "Third Party Release") critical to the success of the Plan.

36.     The Third Party Release is only applicable to: (a) the Released Parties (who sought mutual releases as part of the Restructuring Transaction and/or the Support Agreement); and (b) all Voting Creditors who vote to accept the Plan.

37.     In approving the Third Party Release, the Bankruptcy Court hereby determines, based upon the record and the facts and circumstances of these Chapter 11 Cases, that the Third Party Release: (a) is provided in exchange for the good and valuable consideration; (b) is a good faith settlement and compromise of the claims released by the Released Parties and the Holders of Claims and Interests granting the Third Party Releases pursuant to the terms of the Plan; (c) is in the best interests of the Debtors and all Holders of Claims and Interests; (d) is fair, equitable, reasonable and necessary to the Debtors' reorganization; (e) is given and made after due notice and opportunity for hearing; and (f) constitutes a bar to any Entity granting a release under Section 9.3 from asserting any Claim or Cause of Action released by Section 9.3.

38.    **Exculpation**. The exculpation provisions set forth in Section 9.5 of the Plan are also essential to the Plan. The record in the Chapter 11 Cases fully supports the exculpation, and the exculpation provisions set forth in Section 9.5 of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and are hereby approved.

39.    **Injunction**. The injunction provisions set forth in Section 9.6 of the Plan are essential to the Plan and are necessary to preserve and enforce the Debtors' discharge, the Debtor Release, the Third Party Release, and the exculpation provisions in Article IX of the Plan, and are appropriately tailored to achieve that purpose.

40.    The Debtor Release, the Third Party Release, the exculpation provisions and the injunction set forth in the Plan each: (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 157(b)(1), (b)(2), 1334(a), 1334(b), and 1334(d) and the *Standing Order of Reference from the United States District Court for the Western District of North Carolina* dated as of July 30, 1984; (b) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are an integral element of the Restructuring Transaction upon which the Plan is based; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates and their creditors; (e) are critical to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (f) are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, and other applicable law, and (g) are fair, equitable, reasonable and necessary to the Debtors' reorganization. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Release, the Third Party Release, the exculpation provisions and the injunction contained in Article IX of the Plan.

41.     **Preservation of Rights of Action**. In accordance with and subject to Section 5.11 of the Plan, certain Causes of Action (but excluding Avoidance Actions) are appropriately preserved by the Reorganized Company in accordance with section 1123(b)(3) of the Bankruptcy Code. The provisions regarding the preservation of such Causes of Action (but excluding Avoidance Actions) in accordance with and subject to the Plan are appropriate and are in the best interests of the Debtors, the Estates and holders of Claims and Interests.

**(b)     Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

42.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.

43.     Votes to accept or reject the Plan were solicited by the Debtors after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

44.     The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Section 9.5 of the Plan.

45.     The Debtors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**(c)     Section 1129(a)(3)—Proposal of the Plan in Good Faith**

46.     The Plan has been proposed in good faith and not by any means forbidden by law. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation, solicitation and confirmation. Such good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing, and other proceedings held in the Chapter 11 Cases.

47.     The Plan is the product of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies, including: (i) the Noteholder Agent; (ii) the Noteholders; (iii) the DIP Agent; (iv) the DIP Lenders; (v) the Disbursing Agent; (vi) the Committee; and (vii) the Winning Bidder. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, for the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a substantially improved capital structure that will allow them to satisfy their future obligations

with sufficient liquidity and capital resources. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

> **(d)** **Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable**

48.       Payments made or to be made by the Debtors for services rendered, or for costs and expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

> **(e)** **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

49.       The Debtors have disclosed the identity of the individuals proposed to serve as the officers and directors of the Reorganized Company, to the extent known, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Company. The proposed officers and directors for the Reorganized Company are qualified, and the appointments to, or continuance in, such offices by the proposed officers and directors is consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

> **(f)** **Section 1129(a)(6)—Approval of Rate Changes**

50.       The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

(g)  **Section 1129(a)(7)—Best Interest of Creditors Test**

51.  Each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

52.  The liquidation analysis attached as <u>Exhibit C</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and all  other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or contained in declarations in connection with, the Confirmation Hearing: (a) are reasonable, persuasive and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims or Interests in every Class will recover property of a value, as of the Effective Date, as much or more under the Plan on account of such Claim or Interest than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

(h)  **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

53.  Classes 1 and 2 are Unimpaired Classes of Claims, each of which are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Certification: [(i) Class 3 with respect to each Debtor has voted to accept the Plan; and (ii) Class 4, with respect to those Debtors as to which any Class 4 Claims exist, has voted to accept the Plan]. Classes 5, 6 and 7 are not receiving any distributions under the Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

54.     Because Classes 5, 6 and 7 are conclusively deemed to have rejected the Plan, the

Debtors seek Confirmation under the so-called "cram down" provisions of section 1129(b) of the

Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied in

those two respects, the Plan is nevertheless confirmable because it does not discriminate unfairly

and is fair and equitable with respect to the dissenting Classes. For the reasons set forth below,

the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to

such dissenting Classes.

     **(i)**      **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

55.     The Treatment of Allowed DIP Facility Claims, Allowed Administrative Claims,

Allowed Professional Claims, and Priority Tax Claims under Article II of the Plan, and the

treatment of Allowed Other Priority Claims under Article III of the Plan, satisfies the

requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

Accordingly, the requirements of section 1129(a)(9) are satisfied.

     **(j)**      **Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

56.     As set forth in the Voting Certification, [Classes 3 and/or 4] with respect to each

Debtor have voted to accept the Plan. As such, there is at least one Class of Claims that is

Impaired under the Plan that has accepted the Plan without including any acceptance of the Plan

by any insider. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(10)

of the Bankruptcy Code.

     **(k)**      **Section 1129(a)(11)—Feasibility of the Plan**

57.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence

supporting the Plan proffered or adduced by the Debtors at, or prior to, or contained in the

Grosso Declaration (and the financial information attached thereto or referenced therein) filed in

connection with, the Confirmation Hearing: (a) is reasonable, persuasive and credible as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Company; and (e) establishes that the Reorganized Company will have sufficient funds available to meet its obligations under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**(l)     Section 1129(a)(12)—Payment of Bankruptcy Fees**

58.     Section 13.3 of the Plan provides that the Disbursing Agent shall pay all fees payable pursuant to 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

**(m)     Section 1129(a)(13)—Retiree Benefits**

59.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code.  The Debtors do not provide any "retiree benefits" as defined in section 1114 of the Bankruptcy Code, and accordingly, the requirements of section 1129(a)(13) are inapplicable to the Plan.

**(n)     Sections 1129(a)(14), (15) and (16)—Non-Applicability of Certain Sections**

60.     The Debtors do not owe any domestic support obligations, are not individuals and are not non-profit corporations. Therefore, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**(o)      Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

61.      With respect to Classes 5, 6 and 7 of the Debtors, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code even though the requirements of section 1129(a)(8) have not been met. The Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 5, 6 and 7 (collectively, the "Non-Accepting Claimants").

62.      The Plan is "fair and equitable" with respect to the Non-Accepting Claimants because no junior Class of Claims or Interests will receive or retain any property under the Plan on account of such Claims or Interests.

63.      The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or contained in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims: (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence.

64.      The Plan, therefore, satisfies the requirements of section 1129 of the Bankruptcy Code and may be confirmed.

**(p)      Section 1129(c)—Only One Plan**

65.      Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases. Accordingly, the Debtors have satisfied the requirements of section 1129(c) of the Bankruptcy Code.

**(q)** **Section 1129(d)—Principal Purpose of the Plan Is Not the Avoidance of Taxes**

66. No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the Debtors have satisfied the requirements of section 1129(d) of the Bankruptcy Code.

**(r)** **Section 1129(e)—Small Business Case**

67. Neither of the Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**P.** **Satisfaction of Confirmation Requirements**

68. Based upon the foregoing, all other filed pleadings, documents exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Q.** **Implementation of Other Necessary Documents and Agreements**

69. All documents and agreements necessary to implement the Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such documents and agreements is in the best interests of the Debtors, the Estates and holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which agreements to enter and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been

negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.

## R.  <u>Good Faith</u>

70.    Based on the record in the Chapter 11 Cases, the (i) the Debtors; (ii) the Noteholder Agent; (iii) the Noteholders; (iv) the DIP Agent; (v) the DIP Lenders; (vi) the Disbursing Agent; (vii) the Committee; (viii) the Winning Bidder; and (ix) with respect to each of the foregoing Entities in clauses (i) through (viii), such Entities' Related Persons, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in connection with the Plan and Disclosure Statement, and are therefore, not liable under any applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale or purchase of securities.

## S.  <u>Good Faith Purchaser</u>

71.    The Winning Bidder is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. The Winning Bidder has proceeded in good faith in all respects in connection with this proceeding.

## T.  <u>Arm's-Length Sale</u>

72.    The Restructuring Transaction was negotiated, proposed and entered into by the Debtors and the Winning Bidder without collusion, in good faith and from arm's-length bargaining positions. The Winning Bidder is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. Neither the Debtors nor the Winning Bidder have engaged in any conduct that would cause or permit the Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Winning Bidder has not acted in

a collusive manner with any person, and the purchase price was not controlled by any agreement among bidders.

**U.**    **No Fraudulent Transfer**

73.    The Restructuring Transaction was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Winning Bidder is entering into the transactions contemplated by the Restructuring Transaction fraudulently.

**V.**    **Consideration**

74.    The consideration to be provided by the Winning Bidder pursuant to the Restructuring Transaction constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The purchase price payable in connection with the Restructuring Transaction represents a fair and reasonable offer to purchase the New Shares under the circumstances of the Debtors' Chapter 11 Cases. No other person or entity or group of entities, other than the Winning Bidder, has offered to purchase the New Shares for an amount that would give greater economic value to the Debtors.

**W.**    **Executory Contracts and Unexpired Leases**

75.    Subject to payment of the Cure Amounts, the Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption or rejection of Executory Contracts and Unexpired Leases as contemplated by the Plan, including, without limitation, provisions relating to adequate assurance of future performance. The evidence

supporting adequate assurance of future performance proffered or adduced by the Debtors at, or

prior to, or in the Grosso Declaration filed in connection with, the Confirmation Hearing is

reasonable, persuasive, credible, and accurate and has not been controverted by other evidence.

The forms, terms and provisions of the Plan Supplement may be amended or modified through

and including the Effective Date in a manner consistent with, and that does not materially

modify, the Plan (each of which shall be satisfactory to the Winning Bidder).

## X.   Retention of Jurisdiction

76.     The Bankruptcy Court properly may retain jurisdiction over the matters set forth

in Article XII and other applicable provisions of the Plan.

* * * * * * * *

## ORDER

Based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED:

## Y.   Order

77.     The Plan is confirmed in its entirety pursuant to section 1129 of the Bankruptcy

Code. The terms of the Plan and the Plan Supplement are incorporated by reference into, and are

an integral part of, this Confirmation Order. The Debtors or the Reorganized Company, as

applicable, may amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy

Code and may remedy any defect or omission or reconcile any inconsistency in the Plan in such

manner as may be necessary to carry out the purpose and intent of the Plan, subject to the

limitations set forth herein and in the Restructuring Support Agreement.

## Z.   Objections Overruled

78.     To the extent that any objections, reservations of rights, statements or joinders to

Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of the

Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing or pursuant to this Confirmation Order, they are hereby overruled on their merits.

## AA.  Findings of Fact and Conclusions of Law

79.  The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such. To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

## BB.  References to Plan Provisions

80.  The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement, Restructuring Transaction, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

## CC.  Plan Classification Controlling

81.  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claim under the Plan for

distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Company except for voting purposes.

**DD.**    **Immediate Binding Effect**

82.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Company and any and all holders of Claims or Interests (irrespective of whether holders of such Claims or Interests have accepted or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**EE.**    **Approval of Restructuring Transaction and Authorization of Transaction**

83.    The Restructuring Transaction is hereby approved. The consideration provided to the Debtors in connection with the Restructuring Transaction constitutes reasonably equivalent value and fair consideration for the New Shares. The Debtors, the Reorganized Company, the Noteholder Agent, the Winning Bidder, and each other party to the Restructuring Transaction is authorized to implement and consummate the Restructuring Transaction and is authorized and directed to execute and deliver all necessary documents or agreements required to perform their obligations thereunder.   Such documents or agreements are approved in their entirety. Specifically, (i) the Debtors shall transfer the Assets to the Reorganized Company; (ii) the Reorganized Company shall issue the New Shares to the Winning Bidder (or its designee); (iii) all New Governance Documents shall be executed; (iv) the Reorganized Company shall issue the New Notes to the holders of Class 3 Claims and shall execute and deliver all documentation in connection with the New Notes; (v) the Reorganized Company shall execute all necessary

documentation in connection with and incur the obligations under the Exit Financing; (vi) the Disbursing Agent shall receive cash sufficient to fund the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund; and (vii) Allowed DIP Facility Claims shall be paid in full on the Effective Date. The Restructuring Transaction effects a legal, valid, enforceable and effective sale and transfer of (i) New Shares to the Winning Bidder (or its designee) and (ii) the Assets to the Reorganized Company, and vests the Winning Bidder with title to such New Shares and the Reorganized Company with title to such Assets free and clear of all Liens, Claims and Encumbrances.  The Debtors and the Winning Bidder shall negotiate in good faith to determine the Estimated Administrative and Priority Claims Amount not later than three (3) days prior to the Effective Date.  If the Debtors and the Winning Bidder are unable to agree upon such amounts, then the Estimated Administrative and Priority Claims Amount shall be determined by the Bankruptcy Court.

## FF.   **Good Faith Buyer**

84.     The transactions contemplated by the Restructuring Transaction are undertaken by the Winning Bidder without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Restructuring Transaction shall not affect the validity of the Restructuring Transaction with the Winning Bidder, unless such authorization is duly stayed pending such appeal. The Winning Bidder is a good faith purchaser and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

## GG.   **Bankruptcy Code Section 363(n)**

85.     The consideration provided by the Winning Bidder under the Restructuring Transaction is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

**HH.**   **Section 1145 Exemption**

86.    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Shares, the New Notes and the promissory notes issued under the Exit Financing (the "Exit Financing Notes") shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration, prior to the offering, issuance, distribution or sale of securities. In addition, except as otherwise provided in the Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, the New Shares, the New Notes and the Exit Financing Notes will be freely tradable by the recipients thereof, subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of the New Shares, the New Notes or the Exit Financing Notes; (2) the restrictions, if any, on the transferability of the New Shares, the New Notes or the Exit Financing Notes; and (3) applicable regulatory approval.

**II.**   **Vesting of Assets in the Reorganized Company Free and Clear**

87.    Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement or instrument or other document incorporated in the Plan, on the Effective Date, all property and assets (excluding the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund) of each Estate, including all Causes of Action (but excluding Avoidance Actions), and any other assets or property acquired by any of the Debtors during the Chapter 11 Cases or under or in connection with the Plan, shall vest in the Reorganized Company, free and clear of all Liens, Claims, Encumbrances or other interests.  On and after the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, the Reorganized Company

may operate its business and use, acquire, or dispose of property, and compromise or settle any Causes of Action (other than with respect to Avoidance Actions, which shall be released and waived), without supervision or approval by the Bankruptcy Court and free or any restrictions of the Bankruptcy Code or Bankruptcy Rules.

88.     The provisions of the Plan and this Confirmation Order vesting such assets free and clear of Liens, Claims, Encumbrances or other interests shall be self-executing, and the Debtors and Reorganized Company shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments, agreements, or documents in order to effectuate, consummate and implement such provisions. However, on or before the Effective Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary or reasonably requested by the Debtors or Reorganized Company to release any Liens, Claims, Encumbrances or other interests of any kind or nature whatsoever against any portion or all of the assets of the Estates, as such Liens, Claims, Encumbrances or other interests may have been recorded or may otherwise exist. If any Person or Entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or other interests in or against any assets of the Estates shall not have delivered to the Debtors prior to the Effective Date executed by the appropriate parties and in proper form for filing, the required  termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or other interests, the Debtors and/or Reorganized Company is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person or Entity.

89.     The Exit Financing and the New Notes upon issuance, but retroactive to the Effective Date, (i) shall constitute the legal, valid and binding obligations, on a joint and several

basis, of the Reorganized Company and each of the present and future guarantors who are a party

thereto and shall be secured by valid liens on, and security interest in, all of the Reorganized

Company's assets as provided for in the security documents executed in connection therewith;

and (ii) the obligations, guarantees, mortgages, pledges, liens and other security interests, and all

other consideration granted pursuant to or in connection therewith are or will be (as the case may

be) hereby deemed to be granted in good faith, for good and reasonably equivalent value, fair

consideration and for legitimate business purposes, and shall be, and hereby are, deemed not to

constitute a fraudulent conveyance or fraudulent transfer (for purposes of the Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the

Bankruptcy Code), and shall not otherwise be subject to setoff, avoidance, equitable

subordination or recharacterization; and (iii) the liens, pledges and security interests securing the

Exit Financing and the New Notes shall be deemed perfected immediately and automatically

upon the Effective Date, and without the need for any further action (including, without

limitation, the execution or the filing or recordation of mortgages or deeds of trust (whether fee

or leasehold), security agreements, lockbox or control agreements, pledge agreements, financing

statements or other similar instruments or documents, or the possession or control over any

collateral securing the Exit Financing or the New Notes in any jurisdiction).  The collateral agent

for the Exit Financing and the New Notes is authorized to file or record at any time, and from

time to time, such financing statements, trademark filings, copyright filings, mortgages, notices

of lien or other security documents as may be required, and to take possession or control over, or

take any action in order to validate and perfect the liens and security interests granted under the

documents governing the Exit Financing and the New Notes.  For the avoidance of doubt, and

notwithstanding anything to the contrary herein, no landlord shall be required to execute any

document acknowledging the granting of any lien or encumbrance on its applicable Unexpired

Lease in connection with the Exit Financing or the New Notes, and no Lien or Encumbrance

shall be granted on any assumed Unexpired Lease (as opposed to the proceeds of any such

Unexpired Lease which shall be subject to Liens or Encumbrances in connection with the Exit

Financing and the New Notes), except as expressly permitted in and required by the applicable

Unexpired Lease or pursuant to applicable law.  To the extent issued after the Effective Date,

interest arising under the Exit Financing Notes and the New Notes shall accrue from and after the

Effective Date.

90.    On the Effective Date, cash sufficient to fund the Administrative Claims Reserve,

the Professional Fee Reserve, and the GUC Fund shall be delivered to the Disbursing Agent.

The Disbursing Agent shall be responsible for (i) receiving the Administrative Claims Reserve,

the Professional Fee Reserve, and the GUC Fund; (ii) establishing separate bank accounts for the

maintenance of the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC

Fund; (iii) reviewing, resolving, compromising, and objecting to Claims (other than General

Unsecured Claims) to the extent that the Disbursing Agent deems necessary (in its sole and

absolute discretion); (iv) calculating and effectuating all distributions to be made under this Plan

from the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund (in

the case of the GUC Fund, at the direction of the General Unsecured Claims Ombudsman); (v)

paying any fees pursuant to 28 U.S.C. § 1930 incurred after the Effective Date until the closing

of the Chapter 11 Cases; (vi) completing and filing any post-confirmation reports; and (vii) such

other responsibilities as may be vested in the Disbursing Agent under this Plan, the Confirmation

Order, other Final Orders, or as otherwise may be necessary and proper to carry out the

provisions of this Plan.

91.     From and after the Effective Date, the General Unsecured Claims Ombudsman shall have the authority, but not the obligation, to (1) file, withdraw or litigate to judgment objections to and requests for estimation of General Unsecured Claims, and (2) settle or compromise any General Unsecured Claim that is a Disputed Claim.  The General Unsecured Claims Ombudsman shall be entitled to retain professional advisors to assist it in the performance of its duties under the Plan.  Any costs and expenses of the General Unsecured Claims Ombudsman and its professionals shall be paid from the GUC Fund.

92.     On the Effective Date, except to the extent otherwise provided herein (including as otherwise provided with respect to any contracts evidencing the Restructuring Transaction), all notes, shares, interests, instruments, Certificates and other documents evidencing Claims or Interests shall be cancelled, and the obligations of the Debtors or Reorganized Company thereunder, or in any way related thereto, shall be discharged regardless of whether the holder surrenders such note, instrument, Certificates or other document; provided, however, that notwithstanding Confirmation or occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of (a) allowing holders of Claims or Interests to receive Distributions under the Plan and (b) allowing and preserving the rights of the Disbursing Agent to make Distributions on account of Claims and Interests.

## JJ.     Release and Waiver of Avoidance Actions

93.     As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Company, the Estates and their respective successors and assigns shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released, waived and discharged all Avoidance Actions.

**KK.**   **Injunctions, Releases, Exculpations**

94.     Except as otherwise provided for in this Confirmation Order, each of the discharges, releases, injunctions, indemnification, and exculpations provided under the Plan, including without limitation, those set forth in Article IX of the Plan, are hereby approved as set forth therein; provided, however, that notwithstanding anything in the Plan to the contrary, the Exculpated Parties shall only include: (i) the Debtors; (ii) the Noteholder Agent; and (iii) the Noteholders; (iv) the DIP Agent; (v) the DIP Lenders; (vi) the Disbursing Agent; (vii) the Committee; (viii) the Winning Bidder; and in each case, the respective Related Persons of each of the foregoing Entities.

**LL.**   **Discharge of the Debtors**

95.     Except as otherwise provided for in the Plan and this Confirmation Order, and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan (except with respect to Section 9.3 of the Plan, which shall only apply to Voting Creditors who voted to accept the Plan); (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Committee, the Reorganized Company, their successors and assigns and their assets and properties, any other

Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

## MM. **Dissolution of the Committee**

96.    The Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committee (including each Related Party thereto) and each Professional retained by the Committee shall be released and discharged from all rights, duties, responsibilities and obligations arising from, or related to, the Debtors, their membership on the Committee, the Plan or the Chapter 11 Cases, except with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by the Committee.

## NN. **Treatment of Executory Contracts and Unexpired Leases**

97.    The Executory Contract and Unexpired Lease provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety, except as otherwise provided in this Confirmation Order or as otherwise agreed in writing between the Winning Bidder and the non-Debtor counterparty to an Executory Contract or Unexpired Lease.

98.    On the Effective Date and subject to payment of any Cure Amount, (i) the Executory Contracts and Unexpired Leases set forth on the Assumption Schedule attached hereto as Exhibit A shall be deemed assumed and assigned to the Reorganized Company, and (ii) the Executory Contracts and Unexpired Leases set forth on the Assumption Schedule attached hereto as Exhibit B shall, subject to the modification of the applicable Executory Contract or Unexpired Lease as agreed to between the Debtors and the counterparties thereto, be deemed assumed and assigned to the Reorganized Company as so modified.

99.    Except as agreed to in writing by the Debtors with the applicable non-Debtor counterparty, each assumed Executory Contract or Unexpired Lease, as provided for in Section 6.1 of the Plan, shall include all modifications, amendments, supplements, restatements or other

agreements related thereto, and all rights and obligations related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder.  Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

100.    On the Effective Date, any other Executory Contracts or Unexpired Leases that are not identified on an Assumption Schedule attached to this Confirmation Order shall be deemed rejected.  Notwithstanding the foregoing, the effective date of rejection of any Unexpired Lease of non-residential real property (the "Rejection Date") shall be the later of: (i) the Effective Date or (ii) the date control of the subject premises is relinquished to the affected landlord by delivery to the affected landlord of written notice of delivery of the premises. Any and all property located at the leased premises as of the Rejection Date of the Unexpired Lease of non-residential real property shall be deemed abandoned as is effective as of the Rejection Date and the affected landlords may, in their sole and absolute discretion and without further notice or order of this Bankruptcy Court, utilize and/or dispose of such property without liability to the Debtors, Reorganized Company or any party and, to the extent applicable, the automatic stay is modified to permit such utilization and/or disposition.  All rights of such landlords to assert claims on account of such utilization and/or disposition in accordance with the procedures set forth in this Confirmation Order are reserved.

101.    Any Objection to the assumption of an Executory Contract or Unexpired Lease (an "Assumption Objection") that has not been withdrawn, waived, settled, or continued (i) pursuant to this Confirmation Order, (ii) as agreed to in writing by the parties, (iii) as stated on the record at the Confirmation Hearing or (iv) continued to a later hearing date pursuant to the procedures contained herein, is hereby denied and overruled on the merits with prejudice.

102.    The Cure Notice and Assumption Schedules are final and binding on parties to such Executory Contracts and Unexpired Leases contained therein and their successors and designees and shall not be subject to further dispute or audit based on performance prior to the time of assumption on the Effective Date, except as expressly set forth herein. "Cure Amounts" shall be (i) the amounts as set forth on the Assumption Notices if no Assumption Objection was filed or otherwise asserted by the counterparty; or (ii) if an Assumption Objection was filed or otherwise asserted by the counterparty, as resolved (a) pursuant to this Confirmation Order and the Assumption Schedules, (b) as agreed to in writing by the parties, or (c) as stated on the record at the Confirmation Hearing, or (iii) if an Assumption Objection was, pursuant to an agreement between the Winning Bidder and the applicable counterparty, continued to a later hearing date, (a) as agreed in writing by the parties or (b) as otherwise determined by the Bankruptcy Court. To the extent there is a conflict between the Cure Notice and the Assumption Schedules, the Assumption Schedules shall govern.   Except as expressly permitted herein, the non-Debtor counterparties to the assumed Executory Contracts and Unexpired Leases are forever bound by such Cure Amounts and are hereby precluded from objecting to the Cure Amounts (if any) relating to such Executory Contract or Unexpired Lease and the assumption of such Executory Contract or Unexpired Lease, and enjoined from taking any action against the Reorganized Company, the Winning Bidder, or any of their respective assets with respect to any claim for

cure, or any other default arising under any assumed Executory Contract or Unexpired Lease on or before the Effective Date. Any undisputed Cure Amount shall be paid on the Effective Date. To the extent that, as of the Effective Date a dispute still remains with respect to any Cure Amount, then the undisputed portion of the Cure Amount shall be paid on the Effective Date, and the disputed amounts shall paid promptly following the entry of a Final Order resolving such dispute, or as may be agreed upon by the Debtors or the Reorganized Company, as applicable, and the non-Debtor counterparty to the Executory Contract or Unexpired Leases in an amount as set forth in such Final Order or agreement.

103.    Except as expressly set forth in this Confirmation Order or as otherwise agreed to in writing with any non-Debtor counterparty to an Executory Contract or Unexpired Lease prior to the Confirmation Hearing, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, this Confirmation Order or otherwise, and payment of the Cure Amount thereunder (if any), shall result in the full and final release and satisfaction of any Cure Amounts, Claims or defaults, whether monetary or nonmonetary, including any defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the Effective Date. Effective upon payment of the applicable Cure Amount, any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to, or action, order or approval of the Bankruptcy Court.

104.    Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors or the

Reorganized Company, as applicable, under such contract or lease.  In particular, to the extent permissible under applicable nonbankruptcy law, the Reorganized Company expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, (a) payment to the contracting Debtors or Reorganized Company, as applicable, of outstanding and future amounts owing thereto under or in connection with rejected Executory Contracts or Unexpired Leases, or (b) maintenance of, or to repair or replace, goods previously purchased by the contracting Debtors or the Reorganized Company, as applicable.

105.    Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases.  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Solicitation Agent no later than thirty (30) days after the later of (a) the Effective Date, and (b) the date of entry of an order of the Bankruptcy Court authorizing rejection of such Executory Contract or Unexpired Lease.  Any rejection damages Claim represented by an untimely Proof of Claim shall: (i) be disallowed without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court; (ii) be forever barred, estopped, and enjoined from assertion; (iii) not be enforceable against the Debtors, the Reorganized Company, the Disbursing Agent or the General Unsecured Claims Ombudsman; and (iv) be deemed fully satisfied, released, and discharged notwithstanding anything in a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 4 - General Unsecured Claims against the applicable Debtor counterparty thereto.

106.    Except as expressly set forth in this Order or as otherwise agreed to in writing with any non-Debtor counterparty to an Executory Contract or Unexpired Lease prior to the Confirmation Hearing, all defaults under any Executory Contracts or Unexpired Leases assumed under the Plan and this Confirmation Order occurring, arising, or accruing prior to the Effective Date shall be deemed cured or satisfied upon payment of the respective Cure Amount, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code.

107.    Except as expressly set forth in this Confirmation Order, each counterparty to an Executory Contract or Unexpired Lease on any Assumption Schedule, whether entered into before or after the Petition Date, is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Reorganized Debtors, their Affiliates or their respective properties any default arising prior to or existing as of the Effective Date, or any counterclaim, defense, recoupment, setoff or any other Interest asserted or assertable against the Debtors in connection with any such default, and (ii) imposing or charging against the Reorganized Debtors or their Affiliates, any accelerations, assignment fees, increases, or any other fees or charges as a result of the Debtors' assumption of such contracts and leases. Any provision in an Executory Contract or Unexpired Lease that prohibits or conditions the assumption and/or assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assumption or assignment (including provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults), constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely for purposes of the Plan, this Confirmation Order and section 365 of the Bankruptcy Code, and the

assumption of such Executory Contracts and Unexpired Leases included in the Assumption Schedules is hereby approved; *provided, however*, that nothing herein or in the Plan shall be deemed to authorize any assumption, assignment, or rejection of any assumed Unexpired Lease after the Effective Date except as may be permitted under the terms of such Unexpired Lease, and any rights of setoff or recoupment that landlords may have under applicable bankruptcy or non-bankruptcy law, including but not limited to the ability, if any, of such landlords to setoff, subrogate or recoup a security deposit held pursuant to the terms of their leases with Debtors, are expressly preserved and survive confirmation and the Effective Date of the Plan.

108.   Except as otherwise agreed to in writing among the applicable counterparties, notwithstanding any of the releases, discharges, injunctions or waivers set forth in the Plan or this Confirmation Order, the Debtors and the Reorganized Company shall remain liable for any unpaid Cure Amounts and all obligations arising under the any assumed Unexpired Lease that were not otherwise required to be asserted as a cure claim through a timely filed Assumption Objection.   Except as otherwise agreed to in writing among the applicable counterparties, nothing in the Plan or this Confirmation Order shall modify the rights of, adversely affect, or prevent any landlord of an Unexpired Lease from asserting after the Effective Date: (a) any claim against the Debtors or the Reorganized Company for indemnification pursuant to the terms of the applicable lease, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of their leased premises for which the Debtors' have a duty to indemnify such landlord pursuant to any assumed Unexpired Lease and for which are not known or liquidated by the time of the Confirmation Hearing (and therefore not payable as a cure cost pursuant to Bankruptcy Code § 365(b)(1)(a));   (b) claims for amounts owed or accruing under such Unexpired Lease that are unbilled or not yet due as of the Confirmation Hearing

regardless of when such amounts or obligations accrued, on account of common area maintenance, utilities, insurance, taxes, and similar charges; (c) claims for any regular or periodic adjustment or reconciliation of charges in accordance with the terms of such Unexpired Lease that are not due or have not been determined as of the Confirmation Hearing; (d) claims for any percentage rent that come due under such Unexpired Lease; and (e) claims for post-assumption obligations under such Unexpired Lease; *provided* in each case that such claims are provided for under the Unexpired Lease. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall release, discharge, enjoin or waive the Debtors' obligations to pay rent and other costs and perform under the Leases, in accordance with the terms of the applicable Unexpired Leases and section 365(d)(3) of the Bankruptcy Code, through the effective date of any assumption, assignment or rejection of such Unexpired Lease.

109.   Notwithstanding anything to the contrary herein, nothing in the Confirmation Order or in the Plan shall in any way limit, reduce, or otherwise bar an otherwise valid and enforceable right of setoff, subrogation, or recoupment against the Debtors (with respect to leases that are rejected) or the Reorganized Company (with respect to leases that are assumed) to the extent that such right is based upon a non-residential real property lease.

110.   To the extent a counterparty to any of the Executory Contracts or Unexpired Leases failed to file an Assumption Objection by the stated deadline, such counter party shall be deemed to have (i) consented to the assumption of the applicable Executory Contract or Unexpired Lease and the payment of the Cure Amount, if any, provided in the Cure Notices and Assumption Schedules, as applicable and (ii) waived any right to assert or collect any other cure amount or enforce any default that may arise or have arisen prior to or as of the Effective Date.

111.   All counterparties to the Executory Contracts and Unexpired Leases on any Assumption Schedule shall cooperate and expeditiously execute and deliver, to the extent required pursuant to the terms of any such Executory Contract or Unexpired Lease, any instruments, applications, consents, or other documents reasonably requested by the non-Debtor counterparty or Reorganized Company to effectuate the applicable transfers in connection with the Plan and shall not charge, or be charged by, the non-Debtor counterparty or the Reorganized Company for any associated fees except as may be permitted pursuant to the terms of such Executory Contract or Unexpired Lease. For the avoidance of doubt, no landlord of an assumed Unexpired Lease shall be required to execute any document acknowledging the granting of any lien or encumbrance on its applicable Unexpired Lease in connection with the Exit Financing and New Notes except as expressly permitted in and required by the applicable Unexpired Lease or pursuant to applicable law.

112.   Entry of this Confirmation Order shall, subject to and upon the occurrence of the Effective Date and payment of any Cure Amount, constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption or rejection, as the case may be, of the Executory Contracts and Unexpired Leases assumed or rejected pursuant to the Plan and this Confirmation Order. The effect of Confirmation, the results thereof and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including, specifically, the changes to the Debtors' or Reorganized Companies' board of directors or managers and ownership, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the Executory Contracts and Unexpired Leases included in the Assumption Schedules.

113.   Subject to payment of any applicable Cure Amounts, the Debtors have satisfied all requirements under sections 365(b)(1) and 365(b)(2) of the Bankruptcy Code to provide

adequate assurance of future performance under the assumed Executory Contracts and Unexpired Leases.

## OO.  Appointment of Disbursing Agent and the General Unsecured Claims Ombudsman

114.   The appointment of The Finley Group as the Disbursing Agent is hereby approved. The Disbursing Agent shall have those powers and duties as set forth in the Plan. The appointment of UMB Bank, N.A. as the General Unsecured Claims Ombudsman is hereby approved. The General Unsecured Claims Ombudsman shall have those powers and duties as set forth in the Plan.

115.   The Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund are hereby authorized and approved in accordance with their respective terms. On the Effective Date, the Winning Bidder shall transfer or cause to be transferred to the Disbursing Agent cash sufficient to fund the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund.

116.   To the extent that funds remain after all Distributions have been made from the Administrative Claims Reserve, the Professional Fee Reserve and the GUC Fund in accordance with the Plan, the Disbursement Agent shall, within sixty (60) days following the date of the final Distribution, disburse, by wire transfer of immediately available funds, all such amounts to the Reorganized Company. The Disbursing Agent shall have no liability to any party (other than the Reorganized Company) for the return of any funds to the Reorganized Company from the Administrative Claims Reserve, the Professional Fee Reserve or the GUC Fund in accordance with this Order.

## PP.  Exemption from Certain Transfer Taxes and Recording Fees

117.   To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to the Reorganized Company or to any Entity pursuant to, in

contemplation of, or in connection with the Plan, the Restructuring Transaction, or pursuant to:
(1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the
Debtors or the Reorganized Company; (2) the creation, modification, consolidation, or recording
of any mortgage, deed of trust or other security interest, or the securing of additional
indebtedness by such or other means; (3) the making, assignment, or recording of any lease or
sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer
under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale,
assignments, or other instrument of transfer executed in connection with any transaction arising
out of, contemplated by, or in any way related to the Plan, shall not be subject to any document
recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate
transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee,
regulatory filing or recording fee, or other similar tax or governmental assessment, and the
appropriate state or local governmental officials or agents shall forego the collection of any such
tax or governmental assessment and to accept for filing and recordation any of the foregoing
instruments or other documents without the payment of any such tax or governmental
assessment.

118. Except as expressly provided in the Plan or this Confirmation Order, (i) the
Reorganized Company shall not be a successor to any of the Debtors in the Chapter 11 Cases by
reason of any theory of law or equity, (ii) the Reorganized Company shall not assume, incur or
be responsible for any claims or liabilities of the Debtors or any of their affiliates (other than
those expressly assumed pursuant to the terms of the Plan or this Confirmation Order), (iii) and
neither the Reorganized Company, the Noteholders, nor the Winning Bidder shall be successors
or successors in interest of the Debtors nor incur any successor or transferee liability of any kind,

nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims Liens, liabilities, Encumbrances, charges and other interests arising from or relating to any conduct, liabilities or obligations of the Debtors, and (c) any and all Claims, Liens, liabilities, Encumbrances, charges and other interests and any and all right, title and interests related thereto, of governmental entities relating to any tax or similar liabilities.

119.    Neither the Winning Bidder, the Noteholders, nor any borrower, guarantor, pledgor, loan party or owner, lessee, licensee of collateral under the Exit Financing or the New Notes that is not a Debtor shall have any successor or transferee liability of any kind, nature or character.

## QQ.    **Effectiveness of All Actions**

120.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, members or stockholders of the Reorganized Company and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

## RR.    **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

121.    Pursuant to section 1142(b) of the Bankruptcy Code, each of the Debtors and the Reorganized Company is hereby authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan. Each of the Debtors and the Reorganized Company hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan. On the

Effective Date, the appropriate officers and directors of the Reorganized Company are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Company. Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Company and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Company.

122.    Each of the matters provided for by the Plan involving the consummation of the Restructuring Transaction, establishing the capital and corporate structure, amending or modifying the Existing Governance Documents of any of the Debtors, or other corporate or related actions to be taken by or required of the Debtors or the Reorganized Company, whether taken prior to or as of the Effective Date, are hereby authorized without the need for any further corporate action or without any further action by or approval of any shareholders, directors or managers of the Debtors.  After the Effective Date, the Reorganized Company may amend and restate its certificate of formation, operating agreement and other constituent documents as permitted by the laws of its respective jurisdiction of formation.  On or after the Effective Date, the Reorganized Company and the officers and members of the board of directors thereof shall be authorized to issue, execute, deliver, file or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, without the need for any approvals, authorizations, or consents, except for those expressly required under the Plan.

123.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan and any related documents, instruments, securities, agreements and any amendments or modifications thereto.

## SS.    <u>Establishment of Effective Date Accounts</u>

124.    From the cash to be transferred to the Disbursing Agent to fund the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund, the Disbursing Agent shall establish separate bank accounts for the maintenance of the Administrative Claims Reserve, the Professional Fee Reserve, and the GUC Fund.

125.    In furtherance of Section 2.1 of the Plan, and the indefeasible satisfaction of the DIP Facility Claims in full in Cash on the Effective Date, each holder of an allowed claim arising under the DIP Facility shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, payment in cash in full from proceeds of the Exit Financing.

## TT.    <u>Claims Administration</u>

126.    Any Claims against any of the other Debtors that are not satisfied in accordance with this Plan on the Effective Date shall be administered by the Disbursing Agent in accordance with this Plan.

127.    Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped and enjoined from assertion, and shall not be enforceable against the Debtors, the Reorganized Company or the Disbursing Agent without the need for any objection by the Debtors, the Reorganized Company, the Disbursing Agent or the General Unsecured Claims Ombudsman, or any further notice to, or action, order or approval

of, the Bankruptcy Court.  For the avoidance of doubt, on and after the Effective Date, the

Disbursing Agent and the General Unsecured Claims Ombudsman, as applicable, may negotiate

and settle any Claims, including Claims for which a Proof of Claim has been filed, without

further notice to or approval of the Bankruptcy Court or any other party.

**UU.**   **Effect of Conflict Between Plan and Confirmation Order**

128.    If there is any direct conflict between the terms of the Plan and the terms of this

Confirmation Order, the terms of this Confirmation Order shall control.

**VV.**   **Notice of Entry of the Confirmation Order and Effective Date**

129.    In accordance with Bankruptcy Rules 2002 and 3020(c): (a) promptly after entry

of the Confirmation Order, the Debtors shall file and serve a notice of Confirmation on the

following: (i) counsel to the Committee; (ii) counsel to the DIP Agent, (iii) counsel to the

Winning Bidder; (iv) the Securities and Exchange Commission; (v) the Internal Revenue

Service; (vi) the Bankruptcy Administrator for the Western District of North Carolina; (vii) the

Federal Trade Commission; (viii) the United States Attorney General/Antitrust Division of

Department of Justice; (ix) the United States Attorney's Office; and (x) all entities that have

requested notice in these Chapter 11 Cases under Bankruptcy Rule 2002; and (b) as soon as

reasonably practicable after the occurrence of the Effective Date, the Reorganized Company

shall serve a notice of Confirmation and the Effective Date upon to all parties served with notice

of the Confirmation Hearing, and such notice shall include notice of the bar dates established

under the Plan with respect to: (i) certain Administrative Expense Claims and Professional

Claims; and (ii) Claims arising from the rejection of Executory Contracts and Unexpired Leases

under the Plan. Notwithstanding the foregoing, no notice or service of any kind shall be required

to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation

Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no

forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

**WW.** **Administrative Bar Date**

130.    Each holder of an Allowed Administrative Claim, including, without limitation, a claim of the type described in section 503(b)(9) of the Bankruptcy Code, to the extent such claim has not already been paid during the Chapter 11 Case, shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Claim, payment in full and in cash of the due and unpaid portion of its Allowed Administrative Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) or (y) the date (i) such claim becomes Allowed, or (ii) if the amount of the Claim is otherwise agreed to in writing by the Debtors (with the consent of the Noteholder Agent and Winning Bidder) or the Disbursing Agent in accordance with terms of the Plan, as applicable, and the holder of such Allowed Administrative Claim.    Payments made by the Disbursing Agent on account of an Allowed Administrative Claim shall be paid solely from the Administrative Claims Reserve.

131.    Notwithstanding anything to the contrary in the Plan, any request for allowance and payment of Administrative Claims (other than Professional Claims and Claims for fees and expenses pursuant to 28 U.S.C. § 1930 or Claims regarding Unexpired Leases to be assumed hereunder) arising or accruing on or after September 1, 2017 through the Effective Date, must be filed pursuant to the procedures specified in this Confirmation Order and the notice of entry of this Confirmation Order no later than thirty (30) days after the Effective Date or otherwise be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Debtors and Reorganized Company and their respective Estates and property, the Winning Bidder, the Disbursing Agent, or otherwise, and such Administrative Expense Claim shall be deemed discharged as of the Effective Date.

## XX.    **Professional Claims**

132.    To the extent not previously paid during the Chapter 11 Cases, all requests for payment of Professional Claims (including, without limitation, all final applications for Professional Fee Claims) must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court. The Disbursing Agent shall pay Professional Claims in Cash in the amount allowed by the Court within three (3) days of allowance. From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Company, Debtors, and the Disbursing Agent may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.  To the extent not previously funded under the DIP Facility, any Professional Fee Claim shall be paid (i) for Professionals employed by the Committee, from the GUC Fund, and (ii) for all other Professionals, from the Professional Fee Reserve.

## YY.    **Injunctions and Automatic Stay**

133.    Except as otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

134.    Except as otherwise provided herein, this Confirmation Order, from and after the Effective Date, shall permanently enjoin all Entities from taking any of the following actions against, as applicable, the Debtors, the Reorganized Company, the Released Parties, or the Exculpated Parties (collectively, the "<u>Section 9.5 Parties</u>"): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Section 9.5 Parties or their respective property and assets on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Section 9.5 Parties or their respective property and assets on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Section 9.5 Parties or their respective property and assets on account of or in connection with or with respect to any such Claims or Interests unless such holder filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated or settled pursuant to the Plan.

**ZZ.**    **<u>Nonseverability of Plan Provisions Upon Confirmation</u>**

135.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

### AAA.  **Waiver or Estoppel**

136.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, papers filed with this Court, or stated on the record at the Confirmation Hearing, prior to the Confirmation Date.

### BBB.  **Authorization to Consummate**

137.    The Debtors are authorized to consummate the Plan on any business day selected by the Debtors after the entry of the Confirmation Order, subject to satisfaction or waiver (by the required parties) of the conditions to the Effective Date set forth in the Plan.

### CCC.  **Waiver of Bankruptcy Rule 3020(e)**

138.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, the 14-day stay provided under Bankruptcy Rule 3020(e) shall be waived, and the Confirmation Order shall be effective and enforceable immediately upon entry.

### DDD.  **Final Order**

139.    This Confirmation Order is intended to be a Final Order and the period within which an appeal must be filed commences upon the entry hereof.

This Order has been signed electronically.  The Judge's          United States Bankruptcy Court
signature and court's seal appear at the top of the Order.

**EXHIBIT A**

**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES (NO AMENDMENTS)**

*See attached.*

| Studio Number | Counterparty Name | Studio Address | City | State | Cure Amount |
|---|---|---|---|---|---|
| 9 | TERESA CHIOCCA AND MICHELE CHIOCCA | 11307 Polo Place, Unit C | Midlothian | VA | $5,171.02 |
| 12 | THE CENTRE AT DEANE HILL, GP | 228 Morrell Rd | Knoxville | TN | $3,453.07 |
| 13 | LEVIS COMMONS, LLC | 3185 Chappel Dr, Unit 930 | Perrysburg | OH | $10,314.00 |
| 14 | BRE DDR BR. VALLEY BEND AL LLC | 2750 Carl T. Jones Pkwy, Ste 805 | Huntsville | AL | $4,370.81 |
| 16 | ATA FORUM LOUISVILLE, KY, LLC | 180 N. Hurstbourne Pkwy | Louisville | KY | $3,544.29 |
| 19 | RINEHART ACQUISTION, LLC | 1645 Rinehart Rd | Sanford | FL | $0.00 |
| 21 | GILBRALTAR VIRGINIA S, LLC | 11736 West Broad St, Bldg C, Ste 103 | Richmond | VA | $6,377.77 |
| 22 | SHOPS AT ST. JOHNS, LLC | 4720 Town Crossing Dr, Ste 125 | Jacksonville | FL | $0.00 |
| 23 | MCP VOA II LLC | 7614 Voice of America Centre Dr | West Chester | OH | $5,818.95 |
| 28 | BOARDWALK 15 A, LLC | 8658 N. Boardwalk Ave | Kansas City | MO | $6,687.35 |
| 33 | SIR BARTON PLACE, LLC | 2337 Sir Barton Way Ste 115 | Lexington | KY | $5,497.62 |
| 35 | NP/I & G QUAIL SPRINGS, LLC | 2394 W. Memorial Rd, Ste A | Oklahoma City | OK | $4,697.51 |
| 37 | KITE REALTY GROUP, LP | 502 Kingwood Dr | Kingwood | TX | $9,897.12 |
| 39 | WRI NORTH TOWNE, LLC | 5901 Wyoming Blvd NE, Ste Q | Albuquerque | NM | $9,530.75 |
| 40 | FRENCH CREEK SQUARE AVON-INVESTORS, LLC | 36050-L Detroit Rd | Avon | OH | $9,137.72 |
| 44 | NEW MARKET - CHAMPIONS, LLC | 5315-D FM 1960 West | Houston | TX | $9,918.18 |
| 48 | CRESTVIEW HILLS TOWN CENTER LLC | 2770 Town Center Blvd | Crestview Hills | KY | $8,103.13 |
| 53 | GREENRIDGE SHOPS, INC. | 1129 Woodruff Rd, Ste C | Greenville | SC | $6,170.10 |
| 56 | WEINGARTEN REALTY INVESTORS | 2735 Town Center Blvd N, Ste Q | Sugar Land | TX | $8,344.42 |
| 58 | SUMMITWOODS SPE, LLC | 1728 NW Chipman Rd | Lee's Summit | MO | $0.00 |
| 62 | GRACELAND OWNER, LLC | 126 Graceland Blvd | Columbus | OH | $4,455.00 |

| Studio Number | Counterparty Name | Studio Address | City | State | Cure Amount |
|---|---|---|---|---|---|
| 67 | SONG SIK CHOE AND EUN SOOK CHOE | 1520 Central Park Blvd | Fredericksburg | VA | $6,146.03 |
| 69 | SVF WALDORF, LLC | 3060 Waldorf Marketplace | Waldorf | MD | $0.00 |
| 73 | GCTC HOLDINGS LLC | 9918 Gulf Coast Main St, Ste B103 | Fort Myers | FL | $9,384.96 |
| 74 | WINSTON-SALEM (HANES), LLC | 1033 Hanes Mall Blvd | Winston-Salem | NC | $8,398.40 |
| 80 | CE BOULEVARD PHASE I, LLC | #32 The Boulevard Saint Louis | Richmond Heights | MO | $10,044.00 |
| 95 | IVT RENAISSANCE CENTER DURHAM II, LLC | 7001 Fayetteville Rd, Ste 101 | Durham | NC | $8,908.66 |
| 104 | BRODY CO., INC. | 530 SE Greenville Blvd, Ste H | Greenville | NC | $0.00 |
| 109 | YORK TOWN CENTER HOLDING, LP | 2817 Concord Rd | York | PA | $6,849.28 |
| 112 | JRA-HHF VENTURE, LLC | 14548 SW 5th St | Pembroke Pines | FL | $9,861.73 |
| 133 | IA CRANBERRY SPECIALTY, LP. | 20436 Route 19. Ste 610 | Cranberry Township | PA | $8,054.90 |
| 141 | KITE REALTY GROUP, LP | 3300 Princess Anne Rd, Ste 721 | Virginia Beach | VA | $9,671.76 |
| 143 | R.J.N.B., LLC | 1249 Som Center Rd | Mayfield Heights | OH | $7,087.50 |
| 150 | LOKRE DEVELOPMENT | 4810 Elmore Ave, Stes E & F | Davenport | IA | $5,636.75 |
| 151 | CLIFTON LIFESTYLE CENTER, LLC | 852 Rt. 3, Ste 246 | Clifton | NJ | $3,000.00 |
| 161 | CORDOVA CROSSROADS, LLC | 5090 N. 9th Ave, Ste B | Pensacola | FL | $7,704.16 |
| 163 | ACADIA MARKET SQUARE. LLC, GDC BEECHWOOD, L.LC AND MG MARKET SQUARE LLC | 5601-D Concord Pike | Wilmington | DE | $0.00 |
| 168 | THE SHOPPES AT NORTH ROAN, LLC | 1914 North Roan St, Ste 105 | Johnson City | TN | $4,272.63 |
| 172 | III HUGS, LLC | 2355 Highway 70 SE | Hickory | NC | $0.00 |
| 185 | TRI-PLAYER INVESTMENTS, LLC | 109 Westwood Shopping Center | Fayetteville | NC | $4,350.50 |
| 190 | 95 NYRPT, LLC | 3439 West Genesee Street, Suite 100 | Syracuse | NY | $5,320.73 |

| Studio Number | Counterparty Name | Studio Address | City | State | Cure Amount |
|---|---|---|---|---|---|
| 200 | UPTOWN VILLAGE AT CEDAR HILL, LP | 305 W. FM 1382, Suite 716 | Cedar Hill | TX | $12,086.45 |
| 3001, 3002 and 3003 | WAL-MART STORES, INC. and affiliates (all studios subject to Master Lease Agreement) | 2001 SE 10th Street | Bentonville | AR | $0.00 |
| 0 | AYRSLEY THEATER DEVELOPMENT COMPANY, LLC | 2131 Ayrsley Town Blvd, Suite 300 | Charlotte | NC | $0.00 |
| 0 | AYRSLEY THEATER DEVELOPMENT COMPANY, LLC | 2131 Ayrsley Town Blvd, Suite 300 | Charlotte | NC | $0.00 |
| 0 | AYRSLEY THEATER DEVELOPMENT COMPANY, LLC | 2131 Ayrsley Town Blvd, Suite 300 | Charlotte | NC | $0.00 |
| 95000 | AYRSLEY THEATER DEVELOPMENT COMPANY, LLC | 2 131 Ayrsley Town Blvd, Suite 300 | Charlotte | NC | $0.00 |
| 95000 | AYRSLEY THEATER DEVELOPMENT COMPANY, LLC | 2 131 Ayrsley Town Blvd, Suite 300 | Charlotte | NC | $0.00 |
| | Color Centric Corporation | 100 Carlson Road | Rochester | NY | $0.00 |
| | FUJIFILM North America Corporation (3 total agreements) | Box 200232 | Pittsburgh | PA | $553,060.44 |
| | Genesis Technology Services Corporation | P.O. Box 923 | Winnsboro | SC | $0.00 |
| | Vertex, Inc. | 2301 Renaissance Boulevard | King of Prussia | PA | $0.00 |
| | US Bank Equipment Finance | 1310 Madrid Street, Suite 101 | Marshall | MN | $0.00 |
| | PicTime Ltd, | 9 Odem Street | Caesarea, Israel | Israel | $0.00 |
| | ADP | P.O. Box 842875 | Boston | MA | $0.00 |
| | Elavon, Inc. | 7300 Chapman Highway | Knoxville | TN | $0.00 |
| | First Liberty Insurance Corporation c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Ohio Casualty Insurance Company c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Liberty Mutual Fire insurance Company c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |

| Studio Number | Counterparty Name | Studio Address | City | State | Cure Amount |
|---|---|---|---|---|---|
| | Liberty Insurance Corporation c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Liberty Insurance Corporation c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Liberty Mutual Fire Insurance Company c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Hartford Ins Co of Midwest c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | National Union Fire In Co of Pittsburgh PA c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Liberty Surplus Ins Company c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Hartford Ins Co of Midwest c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Allied World Specialty Ins Co c/o Arthur J. Gallagher RMS Inc. | Box 532143 | Atlanta | GA | $0.00 |
| | Reliance Standard Life Insurance Co. | 6101 Carnegie Boulevard, Suite 300 | Charlotte | NC | $0.00 |
| | American Express | P.O. Box 299051 | Fort Lauderdale | FL | $0.00 |

**EXHIBIT B**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AS AMENDED**

*See attached.*

| Studio Number | Counterparty Name | Studio Address | City | State | Cure Amount |
|---|---|---|---|---|---|
| 2 | PROMENADE SHOPPING CENTER, LLC | 5349 Ballantyne Commons Pkwy, Ste 700 | Charlotte | NC | $0.00 |
| 3 | CROSSROADS PLAZA 1743, LP | 115 Crossroads Blvd | Cary | NC | $0.00 |
| 5 | CBL- SHOPS AT FRIENDLY, LLC | 4215 W. Wendover Ave, Ste N | Greensboro | NC | $8,331.69 |
| 6 | MAYFAIRE TOWN CENTER LP | 865 Inspiration Dr | Wilmington | NC | $0.00 |
| 7 | CP VENTURE FIVE-AWC, LLC | 3625 Dallas Highway Southwest, Ste 725 | Marietta | GA | $2,500.00 |
| 10 | ARC PCBIRAL001, LLC | 180 Main St, Ste 116 | Hoover | AL | $9,611.82 |
| 11 | SGCT GROUP I, LLC | 1113 Market Center Blvd, Bldg A, Unit A | Mount Pleasant | SC | $0.00 |
| 15 | COOLSPRINGS CROSSING LIMITED PARTNERSHIP | 1735 Galleria Blvd, Suite 1037 | Franklin | TN | $0.00 |
| 18 | GGP JORDAN CREEK L.L.C. | 6925 Mills Civic Pkwy, Ste 144 | West Des Moines | IA | $12,554.94 |
| 26 | CAP INVESTORS LV, LLC | 9995 S. Eastern Ave | Las Vegas | NV | $0.00 |
| 31 | POLO TOWNE CROSSING PLANO, TX. LIMITED PARTNERSHIP | 2108 N. Dallas Pkwy, Ste 216 A | Plano | TX | $8,519.28 |
| 32 | NEWMARKET I , LLC | 2441 N. Maize Rd, Ste 201 | Wichita | KS | $5,328.75 |
| 36 | TALLGRASS CENTRE AND SHOPS LLC | 8338 E. 21st St North, Ste 312 | Wichita | KS | $4,947.60 |
| 38 | CSMC 2006-C5 RETAIL 418, LLC | 471 Town Center Place, Ste 7 | Columbia | SC | $0.00 |
| 41 | BURGUNDY ARROW LLC | 144 Chesterfield Valley Dr | Chesterfield | MO | $5,775.44 |
| 47 | G&I VII RETAIL CARRIAGE, LLC | 4650 Merchants Park Circle, Ste 850 | Collierville | TN | $2,500.00 |
| 49 | TCCL I MCMILLAN-EAGLE PARTNERS, L.P. | 7415 Corporate Blvd, Ste 930 | Baton Rouge | LA | $3,246.54 |
| 52 | G & I VI PROMENADE, LLC | 5943 Sky Pond Dr, Ste E136 | Loveland | CO | $2,500.00 |
| 54 | PASSAGE REALTY, INC. | 19419 Guff- Freeway # 2 | Webster | TX | $0.00 |
| 60 | NIP I&G EASTCHASE PROPERTY OWNER, LLC | 7341 EastChase Pkwy | Montgomery | AL | $0.00 |
| 61 | EXCEL HULEN, L.L.C. | 4801 Overton Ridge Blvd., Ste 224 | Fort Worth | TX | $7,434.14 |
| 63 | WEBB GIN PROPERTY (SUB) LLC | 1350 Scenic Highway, Ste 810 | Snellville | GA | $8,519.74 |
| 64 | RPAI LANSING EASTWOOD, L.L.C. | 2991 Preyde Blvd | Lansing | MI | $8,911.52 |
| 72 | SAUCON VALLEY LIFESTYLE CENTER, LP | 3060 Center Valley Pkwy, Ste 812 | Center Valley | PA | $2,500.00 |
| 76 | HERITAGE SQUARE VENTURES, LLC | 7130 Heritage Square Dr, Ste 420 | Granger | IN | $7,084.83 |
| 77 | ASPEN GRF2, LLC | 7301 S. Santa Fe Dr, Ste 160 | Littleton | CO | $7,988.51 |
| 78 | ISBI SUSQUEHANNA, LLC | 2537 Brindle Dr | Harrisburg | PA | $0.00 |
| 83 | SHOPPES AT ST. CLAIR CMBS, LLC | 6540 N. Illinois, Ste 102 | Fairview Heights | IL | $8,137.75 |
| 84 | DAYTON MALL II, LLC | 2848 Miamisburg-Centerville Rd | Dayton | OH | $0.00 |

301322843 v3

| 86 | DDR DB SA VENTURES, LP | 11619 Bandera Rd., Ste 109 | San Antonio | TX | $9,182.01 |
|---|---|---|---|---|---|
| 87 | USPG PORTTFOLIO FIVE, LLC | 1111 Shoppes Blvd | Moosic | PA | $0.00 |
| 90 | BROOKFIELD SQUARE JOINT VENTURE | 95 N. Moorland Rd, Unit AIA | Brookfield | WI | $14,914.80 |
| 92 | SHADOW LAKE TOWN CENTER, LLC | 7474 Towne Center Pkwy, Ste 109 | Papillion | NE | $0.00 |
| 98 | WIL-CPT ARLINGTON HIGHLANDS 1, LP | 4001 Arlington Highlands Blvd, Ste 165 | Arlington | TX | $0.00 |
| 100 | CAMBRIDGE CROSSING SHOPPING CENTER LLC | 4320 Dearborn Circle | Mt. Laurel | NJ | $0.00 |
| 106 | LAKESIDE RETAIL CENTER, LLC | 13941 Lakeside Circle | Sterling Heights | MI | $0.00 |
| 108 | ARC SWWMGPA001, LLC | 706 Woodland Rd | Wyomissing | PA | $17,586.59 |
| 110 | HINES GLOBAL REIT 2615 IVIED CENTER PARKWAY, LLC | 2615 Medical Center Pkwy, Ste 1530 | Murfreesboro | TN | $0.00 |
| 116 | N&R PASTOR, LLC | 20520 Haggerty Rd | Northville | MI | $0.00 |
| 118 | CHERRYVALE MALL, LLC | 7200 Harrison Ave, Ste 22D | Rockford | IL | $0.00 |
| 120 | ZAREMBA GRANDE, LLC | 4895 Grande Shops Ave | Medina Township | OH | $0.00 |
| 128 | GREENWOOD PARK MALL, LLC | 1251 US 31 North, Ste P-175 | Greenwood | IN | $10,443.39 |
| 129 | RIVER CROSSING SHOPPES, LLC | 5080 Riverside Dr, Ste 404 | Macon | GA | $10,899.94 |
| 131 | IRC STONE CREEK, L.L.C. | 3645 Stone Creek Blvd, Ste B | Cincinnati | OH | $11,438.78 |
| 134 | USPG INDIAN LAKE, LLC | 300 Indian Lake Blvd, Bldg T, Ste 140 | Hendersonville | TN | $0.00 |
| 139 | ARLINGTON RIDGE MARKETPLACE, LLC | 790 Arlington Ridge, Ste 225 | Akron | OH | $6,244.70 |
| 140 | DDR OHIO OPPORTUNITY II LLC | 4338 Kent Rd, Ste 200 | Stow | OH | $8,252.13 |
| 155 | CBL/MONROEVILLE EXPANSION, LP | 709-B Mall Circle Dr | Monroeville | PA | $7,761.54 |
| 156 | VALLEY VIEW MALL SPE, LLC | 4822-I Valley View Blvd, NW | Roanoke | VA | $0.00 |
| 159 | AUGUSTA MALL, LLC | 3450 Wrightsboro Rd, Ste D220 | Augusta | GA | $2,500.00 |
| 165 | HARTFORD MALL BUSINESS TRUST | 696-J14 Bel Air Road | Bel Air | MD | $0.00 |
| 166 | AVR CPC ASSOCIATES, LLC | 5555 Whittlesey Blvd, Ste L-2 | Columbus | GA | $5,280.00 |
| 173 | LSREF3 SPARTAN (GENESEE), LLC | 4374 Miller Rd | Flint | MI | $0.00 |
| 182 | PRESIDENTIAL SQUARE COMPANY | 813 Boardman-Poland Road | Boardman | OH | $0.00 |
| 187 | JUDD DEVELOPMENT GROUP, LLC | 8623 Clinton Street, Suite B | New Hartford | NY | $7,862.67 |
| 195 | OGLETHORPE MALL, LLC | 7804 Abercorn Street, Suite 62 | Savannah | GA | $2,500.00 |
| 201 | SOUTHAVEN TOWNE CENTER II, LLC | 6515 Towne Center Crossing , Suite 1220 | Southaven | MS | $6,197.63 |
| 203 | BAILEY AND FULLER PROPERTIES, LLC | 409 Western Blvd., Suite 400 | Jacksonville | NC | $3,998.00 |
| 204 | BOULEVARD PLACE ASSOCIATES, LLC | 1760 Niagara Falls Blvd., Suite 600 | Tonawanda | NY | $2,242.56 |
| 209 | PP-GASTON MALL, LLC | 401 Cox Road, Suite 178 | Gastonia | NC | $0.00 |

301322843 v3